**Mitchell G. HOLDEN and wife, Elaine Holden**

v.

**CITIES SERVICE COMPANY and Johns-Manville Sales Corp.**

**No. CIV–1–79–277.**

United States District Court, E. D. Tennessee, S. D.

Aug. 27, 1980.

On Motion for Credit Against Judgment June 4, 1981.

Fred M. Milligan, Milligan, Hooper & Harris, Chattanooga, Tenn., Conrad Finnell, Finnell, Thompson, Logan & Rogers, Cleveland, Tenn., for plaintiffs.

Raymond R. Murphy, Jr. and James R. Buckner, Miller & Martin, Chattanooga, Tenn., for Cities Service Co.

Harry Weill, Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., for Johns-Manville Sales Corp.

Jerry Foster, Ruth & Foster, Chattanooga, Tenn., for North Bros. Co.

John Y. Powers, Reingold, Powers, Schulman & Robbins, Chattanooga, Tenn., for Monsanto Environ-Chem Systems, Inc.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

The above-captioned case is an action for recovery of personal injuries allegedly sus-

tained in a fall through a roof. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332. The defendants, Cities Service Co. and Johns-Manville Sales Corp., have each moved for summary judgment upon similar grounds. The facts giving rise to these motions are undisputed and appear as follows. The plaintiffs, on July 1, 1977, filed a lawsuit in the Circuit Court of Hamilton County, Tennessee based upon the same accident and injuries herein alleged. Trial was commenced upon September 18, 1979 and at the conclusion of the plaintiffs' proof the defendant, Cities Service Co., moved for a directed verdict. Before a decision was rendered upon that motion, however, the plaintiffs announced their desire to take a voluntary nonsuit and were permitted to take the nonsuit without prejudice. The trial proceeded upon the issue of defendant Johns-Manville's liability to the plaintiffs, which issue was submitted to the jury. The jury was unable to reach a verdict and a mistrial was declared. Thereafter, Johns-Manville moved for a directed verdict and summary judgment. Before any ruling was rendered by the Court, however, the plaintiffs announced their desire to take a voluntary nonsuit and the Court entered an order granting a dismissal without prejudice.

The defendants move for summary judgment on the grounds that a federal court would not have granted a dismissal without prejudice in the prior action and the plaintiffs are forum shopping; therefore, this Court should decline to exercise jurisdiction although the decision of the prior Court was not upon the merits and would not bar relitigation of the same action in the state court.

■ Under Tennessee law no *res judicata* effect attaches to a voluntary nonsuit taken by a plaintiff in a jury trial before the jury retires, so long as no motion for summary judgment is pending and the plaintiff has not previously taken two voluntary nonsuits. *Tn. Rules of Civ.P.* § 41.-01. Likewise, no *res judicata* effect attaches to a court order dismissing the plaintiff's action without prejudice during the pendency of a motion so long as the plain-

tiff has not previously taken two voluntary nonsuits. *Stewart v. University of Tennessee*, 519 S.W.2d 591 (Tenn.1974); *Tn.Rules of Civ.P.* § 41.01(2). Therefore, under Tennessee rules of *res judicata*, the dismissal without prejudice of the plaintiffs' claims against Cities Service and Johns-Manville taken in the state court proceedings do not bar another suit against the same defendants upon the same issues. Under the full faith and credit provisions of 28 U.S.C. § 1738 a federal court may give no greater *res judicata* effect to a state court judgment than the state court would give the judgment. *See Union Planters Bank of Memphis v. City of Memphis*, 189 U.S. 71, 23 S.Ct. 604, 47 L.Ed. 712 (1903); 1A Moore's Federal Practice Digest ¶ 0.311[2]. An exception to this general rule may exist, however, in those limited circumstances where application of the state's *res judicata* rules contravenes some significant federal policy. *See American Mannex Corp. v. Rozands*, 462 F.2d 688 (5th Cir. 1972).

■ The present case involves only questions of state law. The Court finds no federal public policy which will be advanced by precluding the plaintiffs' from maintaining their action in this court. The defendants contend that the plaintiff is forum shopping and that to permit the plaintiffs to maintain an action in this court contravenes the federal policy against forum shopping expressed in *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The purpose of the *Erie* doctrine is to achieve uniform application of state substantive law in all cases involving questions of purely state law and to thereby eliminate any unfair advantage to a party by the choice of a forum. The rule necessarily reduces the incentive for forum shopping because the party knows no matter whether he chooses a federal or state forum, the substantive law to be applied is the same. *Erie* states a rule that reduces the incidence of forum shopping but it is not designed to foreclose a federal forum when under the applicable state law the state forum would not be foreclosed. Since granting the defendants' motion for summary judgment

would contravene the principles of uniform application of state law under *Erie* and of full faith and credit under 28 U.S.C. § 1738, the defendants' motions for summary judgment will be denied.

An appropriate order will enter.

### ON MOTION FOR CREDIT AGAINST JUDGMENT

This is an action to recover for personal injuries sustained in an accidental fall through a roof in the course of an industrial construction project. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332. The case was tried before a jury, with a judgment having entered in favor of the plaintiffs and against the defendant, Johns-Manville Sales Corp. The case is presently before the Court upon a post-trial motion by the defendant, Johns-Manville, seeking credit upon the judgment to the extent of payments made in the course of a pretrial settlement as between the plaintiffs and certain other co-defendants.

This action was instituted by the plaintiffs, Mitchell G. Holden and his wife, Elaine Holden, against Cities Service Company and Johns-Manville Sales Corp. for damages arising out of injuries sustained by Mr. Holden when he fell through the roof of the defendant, Cities Service's, sulphuric acid plant in Copperhill, Tennessee, in the course of certain construction work being performed at that plant. The defendant, Johns-Manville, manufactured and sold the roofing material through which Mr. Holden fell. Cities Service filed a third-party complaint against Monsanto Environ-Chem Systems, Inc., the principal contractor for the construction job, and North Brothers Company, the insulation subcontractor and Mr. Holden's employer. In its third-party complaint, Cities Service asserted that it had contractual rights of indemnity from Monsanto and North Brothers and that it was further entitled to common law indemnity and contribution from both Monsanto and North Brothers. A cross-claim was also filed by Monsanto against North Brothers. In the course of jury selection it was announced that a settlement of the claims between all parties other than those between the plaintiffs and the defendant Johns-Manville had been effected. The case accordingly proceeded to trial upon the latter claim only.

The jury found liability upon the part of Johns-Manville and awarded damages in the sums of $65,000 to Mitchell Holden for personal injuries and $10,000 to Elaine Holden for loss of services. A final judgment was entered upon these verdicts by the Court upon February 27, 1981. A stipulation of dismissal was entered upon March 3, 1981, in which the plaintiffs, Cities Service, Monsanto, and North Brothers stipulated that the action pending between the plaintiffs against Cities Service and by Cities Service against Monsanto and North Brothers should be dismissed with prejudice. The cross-claim between Monsanto and North Brothers was also dismissed with prejudice.

Several affidavits and exhibits have been filed in support of and in opposition to the present motion. The following facts appear from the record. Upon February 19, 1981, the Travelers Insurance Co., Monsanto's liability insurance carrier, issued a check in the amount of $37,500 payable to the plaintiffs and their attorneys in settlement of the liability of Monsanto to Cities Service. This payment was made under an indemnity and hold harmless agreement between Cities Service and Monsanto. An additional check in the sum of $12,500 was issued to the plaintiffs and their counsel upon February 25, 1981, by Cities Service. Both checks were delivered upon March 2, 1981. According to the affidavit of counsel for Cities Service, the plaintiffs agreed to give Cities Service a covenant not to sue in consideration for a payment of $50,000. Cities Service in turn agreed to settle its third-party indemnity claim against Monsanto upon the latter contributing $37,500 toward the $50,000 settlement between the plaintiffs and Cities Service. A copy of the Covenant Not to Sue has been provided the Court.

Johns-Manville has filed the present motion requesting partial relief from the judgment rendered against it on the grounds that, since the plaintiffs have re-

ceived $50,000 on behalf of Cities Service to settle their claims against that defendant, Johns-Manville is entitled to a credit of that amount pursuant to the provisions of TCA § 29–11–105. Rule 60(b) of the *Federal Rules of Civil Procedure* provides, in relevant part, as follows:

"On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding, for the following reasons: ... (5) the judgment has been satisfied, released, or discharged...."

Section 29–11–105 of the *Tennessee Code Annotated*, relied upon by Johns-Manville, provides as follows:

"29–11–105. *Effect of release or covenant not to sue upon liability of other tort-feasors.*—(a) When a release or covenant not to sue or not to enforce judgment is given in good faith to one (1) or two (2) or more persons liable in tort for the same injury or the same wrongful death:

"(1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

"(2) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

"(b) No evidence of a release or covenant not to sue received by another tort-feasor or payment therefor may be introduced by a defendant at the trial of an action by a claimant for injury or wrongful death, but may be introduced upon motion after judgment to reduce a judgment by the amount stipulated by the release or the covenant or by the amount of consideration paid for it, whichever is greater."

The plaintiffs concede that Johns-Manville is entitled to a credit of $12,500 upon the judgment rendered, which amount was paid by Cities Service by its check dated February 25, 1981. The plaintiffs contend, however, that the $37,500 paid on behalf of the third-party defendant Monsanto by the Travelers Insurance Co. should not be credited toward the payment of the $75,000 judgment because: (1) Monsanto had no liability to the plaintiffs and was not therefore a co-tortfeasor with Johns-Manville; and (2) Monsanto's payment was not to settle an obligation arising in tort to Cities Service or to the plaintiffs, but was made solely to fulfill a contractual obligation owed by Monsanto to Cities Service. According to the plaintiffs, the fulfilment of this contractual obligation may inure to their benefit without being the basis for any reduction in the judgment awarded against Johns-Manville.

It is undisputed that the payment made by Travelers for Monsanto was made to settle the liability of Monsanto to Cities Service under the indemnity and hold harmless agreement between those parties. Monsanto had no liability to the plaintiffs. Any liability that it had to Cities Service was contingent upon Cities Service's liability to plaintiffs. It is undisputed, also, that this amount was a portion of the funds paid to the plaintiffs as consideration for their entering into a covenant not to sue and stipulation of dismissal as to Cities Service. Section 29–11–105 has no requirement that the consideration paid for the release or covenant not to sue must come from a "co-tort-feasor". Rather, the statute mandates that any judgment be reduced "by the amount stipulated by ... the covenant or by the amount of the consideration paid for it, whichever is greater". In this connection *see Yett v. Smokey Mountain Aviation, Inc.*, 555 S.W.2d 867 (Tenn.App.) *cert. denied* (1977).

An order will accordingly enter granting satisfaction of the judgment entered against Johns-Manville to the extent of $50,000, the satisfaction to be apportioned between the plaintiffs in the proportion that their respective judgments bear to one another.